IN RE, JAMES A. TOLMAN, appellant from decree of JUDGE OF INSOLVENCY COURT.

Knox.    Opinion April 8, 1891.

*Insolvency. Discharge. Trader. Books of Account. R. S., c. 70, § 46.*

A person must be regarded as a trader, in the meaning of the insolvent law, who in addition to carrying on a milk farm for the purpose of retailing milk among his customers, increased his business by taking the product of his brother's farm, and purchasing from other sources from four to twelve cans of milk daily, each can containing eight quarts, for a period of eight months and more next prior to his going into insolvency.

Such an extent of purchasing, if necessitated by temporary causes, and continued for a short time might not have the effect to constitute a business of trading; but otherwise, continued for so many months.

A trader cannot be said to keep proper books of account, who keeps merely memorandum books, containing deliveries of milk to customers, some informal accounts and settlements, an occasional inventory of farm stock and products, but barely any charges of money paid out, and nothing to indicate where or how the principal proceeds of his business have been expended.

On REPORT.

This was an appeal from the decision of the judge of the Insolvency Court, for Knox County, refusing a discharge to the petitioner on the ground that he was a merchant or trader and had not kept proper books of account. Upon hearing of the appeal the case was certified, on report, to the chief justice for the decision of the full court, under R. S., c. 70, § 13.

The material facts elicited from the insolvent's examination are stated in the opinion.

*C. E. Littlefield*, for appellant.

The facts summarized are: that the debtor was running a milk farm, producing and intending to produce, and arranging to produce all the milk sold, but by reason of unavoidable accident, he was obliged to buy some milk to supply his route for about eight months before he went into insolvency. These facts do not bring this insolvent within any definition of the term trader yet adopted by the court. The definition has already been extended artificially beyond the evident meaning and intent of the law. If a halt is not called in the extension of its application, it will soon be impossible for the average farmer to buy his seed and sell his crops, or to buy stock to fatten and sell, or colts to raise and sell, without becoming a trader. The construction of the statute hitherto adopted by the courts has been exceedingly technical and artificial, rather than remedial and in accordance with its beneficial intent. The underlying purpose of the insolvent law, is to relieve and not to oppress an honest debtor; to mitigate and not create financial distress. It should be construed with reference to its real purpose and objects, that they may be accomplished; not solely with reference to

arbitrary technical distinctions. To illustrate : A livery-stable keeper is held to be a trader because, "he bought hay and grain and sold it by keeping horses to bait and board at his stable." (*Groves* v. *Kilgore*, 72 Maine, 492.) A decision following precedents, but resting upon, at least, finical reasoning. The purchase and sale of one lot of cattle made a person a trader, yet if he killed only such as he reared himself, he would not have been. (*Sylvester* v. *Edgecomb*, 76 Maine, 499.) "But if he buy them and kill and sell them with a view to profit, he is a trader. A farmer, who in addition to his usual business, occasionally bought a horse to sell again for a profit, and continued the practice for one or two years, was held to be a trader."

Where will the court stop with reference to farmers ? May a farmer buy a yoke of oxen in the fall and improve them during the winter to sell again in the spring, "with a view to profit," and continue to do this for years, as many of them do, without being a trader ? Can he buy a horse or colt and keep them in the same way for the same purpose, without being a trader ? Must a butcher raise all the stock he kills in order not to be a trader, or can he buy and fat calves and young stock without being a trader ? Whether it is done "with a view to profit," cannot be the distinguishing element as one cannot conceive of the raising and killing of cattle except with a "view to profit." The business is, if we understand it, carried on "with a view to profit." Now although a farmer who bought a few horses to sell again "with a view to profit," was held a trader, a merchant who bought and sold in many transactions, mining stock, "with a view to profit," to the extent of $3500 was held not to be a trader because, mining stocks were not "merchandise or goods and chattels" under the authorities. *Ex parte Conant*, 77 Maine, 275. Thus the gambler in stock, the most dangerous man to the business community, is relieved of all restraint, and the farmer who, in the most incidental manner and semi-occasionally, tries to eke out his income, by a legitimate method, is visited with all the penalties of the insolvent law. This seems to be the practical effect of the law as now administered.

Judge Lowell held that the words merchant and trader were

almost penal, and that their construction was not to be extended. *In re, Cote*, 2 Low. 374 (S. C. 10 N. B. R. 503). In the same case he held that a farmer who visited Canada several times a year, usually buying horses or cattle and sometimes hay, partly for use on his own farm and partly for sale, was not a tradesman. If the term "trader" and "tradesman" are identical, and they are held to be, this case is in point in our favor. Upon the construction and application of the act, Judge Lowell uses this language, which may well apply at bar : "Taking then the classes of traders, did congress really expect that a farmer, who sometimes incidentally, whether more or less often, bought and sold farm stock in addition to his own, and who would not be fitted by education to keep books and who could not afford to have a clerk, should become an accountant? I think not. And yet if 'tradesman' means 'trader' in the largest sense, and if occasional trading makes a trader, no doubt this defendant was a tradesman."

Did the legislature really expect that a farmer who sold milk in connection with his other business, would be held to be a trader? Clearly not.

Account books : He produces a full account of his sales, also an account of stock. Pages in cipher easily explainable. Invoices of purchases sufficient. *In re, Reed*, 12 N. B. R. 390. What are proper books is to be determined from the circumstances and nature of the business. Bump Bankruptcy, (10th Ed.) p. 727.

*J. O. Robinson and J. F. Libby*, for appelles.

Counsel cited : *In re, O'Bannon*, 2 B. R. 15 ; *In re, Cowles*, 1 B. R. 280 ; *In re, Odell*, 17 N. B. R. 73 ; *In re, Cocks*, 3 Ben. 260 ; *Sutton* v. *Weeley*, 1 East, 442 ; *Jones* v. *Bank*, 79 Maine, 191 ; *In re, Merryfield*, 80 Maine, 233 and cases cited ; *In re, Gay*, 2 B. R. 358 ; *In re, George & Proctor*, 1 Low. 409 ; *Wilkins* v. *Jenkins*, 136 Mass. 38.

PETERS, C. J. The conclusion cannot be avoided, without disregarding previous decisions on virtually the same question, that the insolvent was a trader within the meaning which attaches to that term in our insolvent law. He styles himself a

farmer, carrying on a milk farm in the vicinity of Rockland, and supplying milk to his customers in that city. He commenced the business in the spring of 1886, and went into voluntary insolvency in the spring of 1889. During the period between these dates he was the tenant of a divided half of his father's farm, selling farm products, occasionally buying and selling horses and cows, but making the delivery of milk a constant and his most important business. He kept a herd of cows, varying in number from eight to fourteen, having the latter number at the date of his petition in insolvency.

In May, 1888, the product from his own herd being insufficient for his business, he began to purchase milk from his neighbors to supply the deficiency. His business increased to such an extent that, between August, 1888, and April, 1889, he made regular outside purchases, the amount varying, according to the demand of the market, from four to twelve cans a day; each can containing eight quarts of milk. The purchases were a continuous though not strictly a daily business, because the twelve cans were sometimes a two-days' supply. For several months, during the period above-named, he took all the milk which could be furnished him by his brother who carried on the other half of the same farm, a large amount comparatively considered, but he also continuously purchased during the same time of other persons.

Certainly, the insolvent's occupation was more than that of farming. He was engaged in a regular, constant and extensive business of buying and selling milk. Although he produced from his own herd more than he bought of others, still the purchases contributed largely to the amount of his sales. The insolvent offers in explanation of such purchases, that they were of a temporary character; that he was all the while intending to add to his stock of cows, which had become reduced by disease and accident, but had been delayed in so doing by financial embarrassment; and that he had been expecting that, at the approach of spring, natural causes would increase the product from the stock he had; thereby relieving him from the necessity of procuring milk outside of the production on his farm. This

explanation would be good, no doubt, had the delay in procuring new stock existed for a few days merely, or, in some circumstances, for a considerably longer time; but when the same condition of things continues for an unbroken period of six months and more, it looks like a regular rather than a merely temporary or exceptional thing. Taking as favorable view of the facts as we can, we feel constrained to declare the insolvent to have been a trader in the article of milk. *Sylvester* v. *Edgecomb*, 76 Maine, 499; *Merryfield's Appeal*, 80 Maine, 233.

Did the insolvent keep proper books of account, as required by statute? He kept no regular book account. He used a book in which was entered deliveries of milk, containing, under printed headings, names, dates and amounts. He also had a small hand-book, in which were some informal accounts with different persons, rather in the nature of memoranda to supply personal memory than anything else. Some of these entries are in cipher, to prevent persons about him prying into his affairs. On his book are several inventories of his stock and property, and also some credits of money. But he nowhere enters in any book, in a single instance even, any purchases of milk or money paid or settlements made therefor. This important test of book-keeping fails. He has an account rendered by his brother for milk, but it is not carried upon any book. No one can ascertain from the insolvent's books the condition of his affairs. The law does not heed excuses for not keeping books,—it requires them to be kept. Here there was a failure to comply with the law.

The counsel for the insolvent thinks it a hardship to require an honest debtor in such limited and humble business, without education in the matter of books and accounts, to keep books of account as a condition of a discharge from debt in case of his financial misfortune. There can be no remedy but by an appeal to the legislature.

The decree below refusing a discharge must be affirmed.

*Decree affirmed.*

VIRGIN, LIBBEY, EMERY, HASKELL and WHITEHOUSE, JJ., concurred.